Malick's Petition.
Allegheny County's Appeal.

Argued May 5, 1938.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER, and RHODES,
JJ.

*John J. O'Connell,* Assistant County Solicitor, with him *Charles Alvin Jones,* County Solicitor, for appellant.

*Walter J. Wagner,* for appellee.

OPINION BY CUNNINGHAM, J., September 28, 1938:

The original parties to the litigation out of which this appeal arose were Herbert Preston Malick and his wife, Lucetta, the owners of four adjoining lots in the Borough of Brentwood, Allegheny County, (three of which were purchased in 1909 and the fourth in 1910) and the County of Allegheny, which in 1917, 1918, 1924, 1926 and 1929, filed tax liens against those lots.

Their pleadings consisted of a petition by the Malicks that the liens be stricken off, a rule to show cause granted thereon, and an original and a supplemental answer by the county.

Under the conclusion we have reached, the details of the petition and answers need not be recited. In general, the ground upon which the court below was asked to strike off the liens was that, although proceedings had been had from time to time to revive them, it appeared from the record that a period of more than five years had elapsed after the last previous revival and before subsequent revival was sought with respect to the first four liens, and as to the fifth a like period

had expired after the date of its filing without any suggestion of non-payment and averment of default.

With the record in this condition, the lot owners filed, on June 18, 1937, their petition to strike off. In its original answer, filed September 7, 1937, the county admitted the facts relative to its failure to revive, as set forth in the petition, but, relying upon the provisions of an act of assembly, No. 560, approved July 2, 1937, P. L. 2750, 53 PS §2037c, validating any county tax liens not revived every five years if the county should, within six months after the passage of the act, file a suggestion of non-payment and an averment of default, contended the liens had, as a matter of law, been "ratified, confirmed and validated."

In compliance with the terms of the statute, the county, on September 7, 1937, filed in the prothonotary's office a suggestion and averment of non-payment of the liens and on September 9th pleaded the fact of such filing in its supplemental answer.

Another provision of the validating act of July 2, 1937, supra, reads: "Provided, however, That any such lien shall not reattach against any real estate transferred to any purchaser during the time when the lien of any such tax lien was not revived, nor shall any such lien so revived *impair* or *affect* the *priority* of the lien of any *mortgage* or other lien which *gained* *priority* during the time such lien was not revived." (Italics supplied)

The inclusion of this proviso in the statute, and the existence of the following facts, were construed by counsel for a third party to be a justification for the raising of a collateral issue.

The Malicks had given their bond for $10,000, secured by a mortgage upon three of the lots, to John Wagner, on September 29, 1909, which securities passed by assignment in 1921 to Augusta Wagner.

While the issue between the original parties relative

to striking off the liens was pending in the court below, Augusta Wagner filed, on October 1, 1937, her "petition to intervene." After outlining the controversy between the original parties, reciting the filing of its suggestion by the county on September 7, 1937, and referring to the proviso, the petition continued:

"Ninth: Your petitioner avers that all of said five (5) tax liens, having become lost by reason of failure to revive, permitted her mortgage to gain priority over said tax liens, and further avers that said priority continues to exist since the revival of said tax liens on September 7, 1937, ......

"Tenth: Your petitioner requests the court to determine at this time a priority of her mortgage over said tax liens, so that if in the event of a foreclosure upon said property, it will not be necessary to pay into the sheriff's hands the amount of said tax liens, penalties, interest and costs thereon, together with the necessary poundage, and the filing of exceptions to the sheriff's return thereafter, at any sheriff's sale proceeding that may be held, to determine whether or not the mortgage or said tax liens has priority.

"Wherefore, your petitioner prays that she be allowed to intervene in the above entitled proceeding so that her rights under her mortgage may be determined so far as Act No. 560 of the Acts of 1937 relates thereto."

A rule was granted upon the county to show cause why the "mortgage ...... should not have priority over ...... the tax liens ...... and an order of court made setting forth said priority, ...... in the event of a foreclosure of the real estate ...... upon said mortgage, ...... and the divestiture of said tax liens ...... without further proceedings in this court."

The county, in its answer, formally denied the mortgage had gained priority over its liens. Its real ground, however, for asking that the rule for intervention be discharged was thus stated:

"The averments [of the petition] are immaterial to the issues raised by the petition to strike off tax liens, are speculative and argumentative and are prematurely stated as dealing with proceedings that may or may not ever be held in the future, and for the further reason that petitioner has a complete and adequate remedy at law for the protection of her rights, should such events ever take place."

After argument, the court below, on December 7, 1937, entered its order making the rule for intervention absolute and decreeing that the mortgage has priority over the tax liens "in the event of a foreclosure of the said mortgage on this property" and that such foreclosure "shall work a divestiture" of the several tax liens. An excerpt from the opinion sustaining the order reads:

"We think, under the equitable power vested in this court, this intervening petitioner is entitled to have her rights here determined.

"The said acts specifically except from the operative effect thereof any impairment of the priority of the lien of any mortgage which gained priority during the time the tax lien was lost. As between the mortgage and the tax liens, this mortgage is first in lien. The acts giving the right of revival of liens we think equally accord this intervening petitioner the right to the equitable aid of the court she here seeks."

No disposition whatever was made of the issue raised by the pleadings between the original parties, then pending and ready for adjudication by the court below, nor was any reason assigned by that tribunal for its failure to dispose of the fundamental issue in the proceeding. If the Malicks are entitled, as a matter of law, to have the tax liens stricken from the record, every possible issue relating to priority of lien as between the tax claims and the Wagner mortgage will automatically disappear from the case.

The present appeal is by the county from the order and decree of December 7, 1937. Its representatives contend the court below erred; (a) In permitting the intervenor to inject into the proceedings to strike off the liens an issue which was not only foreign to those then pending between the original parties, but also premature, as no controversy had up to that time arisen between the county and the intervenor; and (b) In undertaking to dispose of the question raised· by the intervenor without passing upon the issues arising under the original petition and answers thereto.

We are of opinion, from our examination of this record, that the order appealed from must be reversed. Under our understanding of the applicable principles of law we think the filing of the petition to intervene was premature. But in addition to and entirely aside from that consideration, the court below committed reversible error in disposing of the issues under the rule for intervention without first adjudicating those arising under the rule to strike off.

The questions raised by the respective petitions are different and, as indicated, the disposition of the original petition might, or might not, affect the other. What the court really permitted was not *intervention* by the holder of the mortgage, but the use by her of the Malicks' original proceeding as a means of presenting her own separate problem. In granting the intervenor the relief prayed for the court below left the questions raised by the original petition suspended in mid-air.

We have concluded to remit this record to the court below, primarily to the end that the pending rule to strike off the tax liens may be decided one way or the other.

Our reason for holding the petition to intervene premature is that at the time it was filed the intervenor had no interest in the tax liens and there was no dispute or controversy between her and the county. Her

interest would arise only in the event of a sheriff's sale of the lots, and then only if the tax liens were validated by the statute and remained unpaid. If such contingencies arise she will have an adequate legal remedy by filing exceptions to the sheriff's schedule of distribution, if the liens should therein be given priority over her mortgage.

In general, courts lack power to decide questions which when presented are wholly moot, but which may arise in the future if certain events happen, and particularly where an adequate remedy is available should the contingency arise. Thus, in *Philadelphia, to use, v. Leverington Cemetery Co.,* 104 Pa. Superior Ct. 386, 159 A. 75, we held that a petitioner should be refused permission to intervene where his assertion of such right is premature and where an adequate legal remedy is provided for settling the question should it ever actually arise. In that case certain individual owners of cemetery lots were refused intervention in scire facias proceedings sur municipal liens where the cemetery association was actively defending against the claims and where the lot owners had ample remedies to protect their interests should the municipality in the future issue execution against their lots. See also *Short v. Board of the School District of Upper Moreland Twp.,* 108 Pa. Superior Ct. 503, 165 A. 669, where we affirmed the discharge of a rule to show cause for the reason that "an actual controversy [was] not disclosed and the question raised [was] purely academic." A rule to show cause must be based on a real controversy or case: 2 Standard Penna. Practice page 468, citing the Short case, supra.

What the intervenor really sought, and the court below granted, was, in effect, a declaratory judgment or adjudication of her possible rights in the future. Under the "Uniform Declaratory Judgments Act" of June 18, 1923, P. L. 840, 12 PS §831, our courts have refused

to pass upon questions submitted in cases where the record disclosed neither an "actual controversy" nor the "ripening seeds" of one: *Carwithen's Estate*, 327 Pa. 490, 194 A. 743; *Sterrett's Estate*, 300 Pa. 116, 150 A. 159; *Pittsburgh's Consolidated City Charter*, 297 Pa. 502, 147 A. 525; *Kariher's Petition*, (No. 1) 284 Pa. 455, 472, 131 A. 265; *Wagner v. County of Somerset*, 96 Pa. Superior Ct. 434; *Huester v. Lackawanna County*, 308 Pa. 9, 161 A. 537.

It is equally the uniform rule of all the decisions that relief will not be granted under the Declaratory Judgments Act where another established remedy is available: *Erie City v. Phillips, Admx.*, 323 Pa. 557, 187 A. 203; *Sterrett's Estate*, supra.

The validating act of July 2, 1937, supra, prescribes no special procedure for determining the priority of liens. The mere fact that the intervenor considered the method she adopted more convenient than the statutory procedure of filing exceptions to a sheriff's schedule of distribution did not justify the departure made in this case from firmly established principles. See *Caner v. Bergner*, 27 Pa. Superior Ct. 220; *Keystone State B. & L. Assn. v. Butterfield*, 74 Pa. Superior Ct. 582; *Avalon Borough School Dist. v. Weeks*, 118 Pa. Superior Ct. 85, 179 A. 913.

The principle that a court should refrain from deciding a question which is moot because prematurely raised should, we think, apply equally whether the relief be sought by petition and rule or by a proceeding under the Declaratory Judgments Act. A court will not pass upon abstract propositions of law, regardless of whether a real dispute between actual litigants is in existence at the time: *Rockwell v. Warren County*, *(No. 1)* 34 Pa. Superior Ct. 581.

The single assignment in this case charges error in making absolute the rule for intervention and entering

the order of December 7, 1937; for the reasons herein stated it must be sustained.

Order reversed and record remitted for further proceedings not inconsistent with this opinion.